UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DEBORA KITCHEN, individually and : 
as ADMINISTRATRIX OF THE ESTATE :
OF SHAWN KITCHEN, :   NO. 3:19-CV-1936
                  Plaintiff, :
:   (JUDGE MARIANI)
     v. :
:
CLINTON COUNTY, WELLPATH LLC :
f/k/a CORRECT CARE SOLUTIONS, :
LLC; KARL PECHT; HOLLY BARRETT; :
CHRISTAL MILLER; CYNTHIA MANN; :
ASHELY BECHDEL; CATHY PERRY; :
[FIRST NAME UNKNOWN] POWELL; :
[FIRST NAME UNKNOWN] MOORE; :
[FIRST NAME UNKNOWN] MUTHLER; :
and [FIRST NAME UNKNOWN] :
WATSON, :
             Defendants. :

## MEMORANDUM OPINION

### I. INTRODUCTION

Presently before the Court is the motion to dismiss filed by Defendant Karl Pecht,

M.D. (Doc. 43). Defendant Pecht seeks dismissal of portions of the complaint filed by

Plaintiff Debora Kitchen, individually and as administratrix of the Estate of Shawn Kitchen

("plaintiff"). For the reasons discussed below, the Court will deny the motion.

### II. FACTUAL ALLEGATIONS

On November 21, 2017, Shawn Kitchen became incarcerated at the Clinton County

Correctional Facility pursuant to a detainer involving an alleged probation violation. (Doc. 1,

Compl. at ¶ 26).  He had "pre-trial detainee" status at the prison. (*Id.* at ¶ 27).   Kitchen

complained of severe back pain at intake and processing.  The prison prescribed nerve and

pain medication, such as Tylenol and ibuprofen, as well as a steroid taper to resolve what

the medical staff diagnosed as muscular skeletal complaints.  (*Id.* at ¶ 28).  The medicine

did not resolve Kitchen's pain, and the pain instead increased.  (*Id.* at ¶ 30).  Kitchen's

condition continued to worsen for two weeks, until he died on December 3, 2017 from a

kidney infection.  (*Id.* at ¶¶ 103—104).

Plaintiff alleges that the defendants had been immediately aware that the medicine

did not work.   (*Id.* at ¶ 29). As early as November 24, 2017, Defendant Holly Barrett, LPN,

reported that Kitchen had so much pain that he was crying in his cell and could not stand on

his own.  (*Id.* at ¶¶ 7, 31).  Kitchen requested that he be taken to the emergency room,

Barrett denied the request without any examination, care or treatment.  (*Id.* at ¶ 32).

Over the next two weeks, Kitchen's condition continued to worsen.  He screamed

and cried from pain.  (*Id.* at ¶ 42-94).   He also continued to seek emergency care as the

pain spread.  (*Id.* ¶ 45). He began to hit his head against the bars due to the pain.  (*Id.* at ¶

63).  He shook and perspired profusely.  (*Id.* at ¶ 72). Defendant Pecht examined Kitchen a

week after he started taking the medicine.  (*Id.* at ¶ *55).*  Defendant Pecht noticed that

Kitchen "was extremely anxious, had pain everywhere, was perspiring profusely" and

winced and complained of severe tenderness anytime and anywhere Pecht touched him.

(*Id.*) Regardless, Pecht did not change his medical regimen or provide him emergency medical care. (*Id.* at ¶ 56).

Medical staff repeatedly denied Kitchen's requests for emergency care. (*Id.* at ¶¶ 45, 73, 74, 90). He eventually could not move or eat. (*Id.* at ¶¶ 79, 93). He laid in his cell immobile and urinated on himself. (*Id.* at ¶ 91). Corrections staff ridiculed him and placed him in a restraint chair for hours as punishment for continuing to seek medical care. (*Id.* at ¶¶ 65 66). They told him that he complained too much. (*Id.* at ¶ 85).

On December 3, 2017, Defendants Bechdel and Barrett found Kitchen lying face down in his cell, soaked in urine. (*Id.* at ¶ 95). They reported that he appeared to be catatonic, but neither called for emergency medical assistance. (*Id.* at ¶ 96). Instead, Bechdel and Barrett along with corrections staff placed him in a wheelchair to take him to the shower where he lost consciousness and his pulse. (*Id.* at ¶ *97*). Then for the first time, prison medical staff called for emergency medical assistance. (*Id.* at ¶ 99). Staff members reported to the emergency medical personnel that Kitchen had not had any recent injury or illness and had no complaints prior to his collapse. (*Id.* at ¶ 102).

Shortly after the emergency medical personnel arrived, Kitchen was pronounced dead. (*Id.* at ¶ 103). He died from a kidney infection caused by an easily treatable urinary tract infection. (*Id.* at ¶ 104). He was forty (40) years old. (*Id.* at ¶ 105). By the time Kitchen died, the Medical and Correctional Defendants had denied over two dozen requests

for medical assistance.  (*Id.* at ¶ 100).  Defendant Pecht had physically examined him only once.  No blood work or tests had been performed, and no antibiotics had been prescribed. (*Id.*)

Based upon these allegations, which are provided with much greater detail in the complaint, Kitchen's Estate filed the instant lawsuit.  The eight (8) count complaint asserts the following causes of  action: Count I, failure to adopt policy, or in the alternative, failure to train or supervise, pursuant to 42 U.S.C. § 1983 against the Municipal Defendants[1]; Count II, denial and delay of access to adequate medical care pursuant to 42 U.S.C. § 1983 against the Medical Defendants[2]; Count III, denial and delay of access to adequate medical care pursuant to 42 U.S.C. §1983 against the Correctional Defendants[3]; Count IV, failure to intervene pursuant to 42 U.S.C. § 1983 against the Medical and Correctional Defendants; Count V, medical negligence (wrongful death) against Defendants Pecht and Wellpath; Count VI, medical negligence (survival) against Defendants Pecht and Wellpath; Count VII, medical negligence (wrongful death) as to the LPN Defendants[4]; and Count VIII, medical negligence (survival) as to the LPN Defendants and Wellpath.

---

[1] Plaintiff lists the Municipal Defendants as Clinton County and Wellpath, LLC.  (Doc. 1, Compl. at ¶ 5).
[2] The Medical Defendants are Karl Pecht, M.D.; Holly Barrett, LPN; Christal Miller, LPN; Cynthia Mann, LPN; Ashely Bechdel, LPN; and Cathy Perry, LPN.  (Doc. 1, Compl. at ¶ 12).
[3] The Correctional Defendants are Powell, Moore, Muthler, and Watson.  (Doc. 1, Compl. at ¶ 19).
[4] The LPN Defendants are Holly Barrett, LPN; Christal Miller, LPN; Cynthia Mann, LPN; Ashely Bechdel, LPN; and Cathy Perry, LPN.

Defendant Karl Pecht, M.D. has filed a motion to dismiss Counts III and IV as well as all claims of recklessness against him. The parties have briefed their respective positions, bringing the case to its present posture.

### III. STANDARD OF REVIEW

The court must dismiss a complaint under Federal Rule Civil Procedure 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations, alterations, and quotations marks omitted). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements." *Ethypharm S.A. France v. Abbott Labs.*, 707 F.3d 223, 231 n.14 (3d Cir. 2013) (internal citation, alteration, and quotation marks omitted).  Thus, "the presumption of truth attaches only to those allegations for which there is sufficient 'factual matter' to render them 'plausible on [their] face.'"  *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (alteration in original) (quoting *Iqbal*, 556 U.S. at 679). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption."  *Id*.

"Although the plausibility standard 'does not impose a probability requirement,' it does require a pleading to show 'more than a sheer possibility that a defendant has acted unlawfully.'"  *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal citation omitted) (first quoting *Twombly*, 550 U.S. at 556; then quoting *Iqbal,* 556 U.S. at 678).  "The plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  *Id.* at 786-787 (quoting *Iqbal,* 556 U.S. 679).

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile."  *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

## IV. ANALYSIS

Defendant Pecht challenges Counts II and IV and the allegations of reckless against

him.[5]  We will discuss each of these issues in turn.

### A.  Count II – Denial and Delay to Adequate Medical Care

Count II of the plaintiff's complaint asserts a cause of action under 42 U.S.C. § 1983

for denial and delay of access to adequate medical care against the medical defendants

including Defendant Pecht.  (Doc. 1, Compl. ¶¶ at 125—26).  Specifically, plaintiff alleges:

> The Medical Defendants manifested deliberate indifference to [plaintiff's]
> serious medical needs by inflicting unnecessary and wanton pain upon him by
> denying and/or delaying access to medical care in a way that patently offends
> the evolving standards of decency for which he was constitutionally protected
> to enjoy by, among other things, knowing of [plaintiff's] need for medical
> treatment but intentionally refusing to provide it, delaying necessary medical
> treatment to him based on non-medical reasons, and/or preventing him from
> receiving needed or recommended medical treatment.

(*Id.* ¶ 126).

As noted above, plaintiff brings suit pursuant to 42 U.S.C. § 1983.  In pertinent part,

section 1983 provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom,
> or usage, of any State or Territory or the District of Columbia, subjects, or
> causes to be subjected, any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any rights, privileges, or

---

[5] The heading on Defendant Pecht's motion and brief indicate that he is moving to dismiss Count III and not Count II.  His brief, however, and the fact that Count III is not directed at him indicate that he actually seeks dismissal of Count II.  We will proceed on the basis that he challenges Count II, not Count III.

immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

Section 1983 does not, by its own terms, create substantive rights. Rather, it provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws. *United States v. Kneipp*, 95 F.3d 1199, 1204 (3d Cir. 1996). To establish a claim under section 1983, two criteria must be met. First, the conduct complained of must have been committed by a person acting under of color of state law. Second, the conduct must deprive the complainant of rights secured under the Constitution or federal law. *Sameric Corp. of Delaware, Inc. v. City of Philadelphia*, 142 F.3d 582, 590 (3d Cir. 1998).

Here, it is not contested that Defendant Pecht is a state actor, thus the first criterion is satisfied. As to the second criterion, plaintiff seeks redress for the violation of Kitchen's right to adequate medical care as a pretrial detainee, which is a right protected by the due process clause of the Fourteenth Amendment to the United States Constitution. *See Natale v. Camden Cty. Corr. Facility,* 318 F.3d 575, 581 (3d Cir. 2003). Such claims are analyzed under the same standard used by courts to examine similar claims brought by prisoners under the Eighth Amendment's prohibition of cruel and unusual punishment. *Id.* at 582. An Eighth Amendment violation may be established by showing both a serious medical need and acts or omissions by prison officials indicating deliberate indifference to that need. *Id.*

8

The parties do not dispute that Kitchen suffered from a serious medical need.

Therefore, the focus of our analysis is on whether plaintiff has sufficiently alleged that

Defendant Pecht by his acts or omissions demonstrated deliberate indifference to Kitchen's

serious medical need.  Deliberate indifference to a serious medical need involves the

"unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

The Third Circuit Court of Appeals has explained instances where deliberate indifference

may be shown as follows:

> We have found "deliberate indifference" in a variety of circumstances,
> including where the prison official (1) knows of a prisoner's need for medical
> treatment but intentionally refuses to provide it; (2) delays necessary medical
> treatment based on a non-medical reason; or (3) prevents a prisoner from
> receiving needed or recommended medical treatment.  We also have found
> "deliberate indifference" to exist where the prison official persists in a
> particular course of treatment in the face of resultant pain and risk of
> permanent injury.

*Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (internal citations and quotation
marks omitted).

In other words, deliberate indifference is manifested by an intentional refusal to

provide care, delayed medical treatment for non-medical reasons, denial of prescribed

medical treatment, delaying needed treatment for non-medical reasons or denying requests

for needed or recommended treatment, or persisting in a course of treatment that is not

providing relief. *Id.*

"Mere medical malpractice cannot give rise to a violation of the Eighth Amendment."

*White v. Napoleon*, 897 F.2d 103, 108 (3d Cir. 1990) citing *Estelle*, 429 U.S. at 106.

Additionally, it is insufficient to allege a mere disagreement regarding the appropriate

medical treatment. *Monmouth Cty Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346

(3d Cir. 1987). Regardless, circumstances may exist, as plaintiff here alleges, where "some

care is provided yet is insufficient to satisfy constitutional requirements. For instance, prison

officials may not, with deliberate indifference to the serious medical needs of the inmate, opt

for 'an easier and less efficacious treatment' of the inmate's condition." *Palakovic v. Wetzel*,

854 F.3d 209, 228 (3d Cir. 2017) (quoting *West v. Keve*, 571 F.2d 158, 162 (3d Cir. 1978)).

Most notable for our analysis of the plaintiff's allegations, the Third Circuit has found that

"persistent conduct in the face of resultant pain and risk of permanent injury[,]" such as

"insist[ing] on continuing courses of treatment that the doctor knew were painful, ineffective

or entailed substantial risk of serious harm to the prisoner[ ]" constitutes deliberate

indifference. *White*, 897 F.2d at 109; *see also Pearson v. Prison Health Serv.*, 850 F.3d

526, 541 (3d Cir. 2017).

Here, Defendant Pecht argues that plaintiff has alleged mere medical malpractice

which does not rise to the level of deliberate indifference. Plaintiff argues that the

complaint's allegations make out a claim of deliberate indifference because they

demonstrate that Defendant Pecht persisted in a particular course of treatment which clearly

was not working as Kitchen's condition deteriorated. After a careful review, we agree with

the plaintiff.

As noted above, deliberate indifference can be found where a prison official such as Defendant Pecht persists in a particular course of treatment even though that treatment is not working and causing more pain and risk of permanent injury. *Id., see also Jones v. Tritt*, NO.1:16-cv-1537, 2019 WL 719636 at *11 (M.D. Pa. Feb. 20, 2019) (denying summary judgment where medical treatment was continued even though it was ineffective and plaintiff's condition was worsening); *Tenon v. Dreibelbis,* NO. 1:12-cv-1278, 2017 WL 1344643 at *13 (M.D. Pa. Apr. 12, 2017) (denying summary judgment were prisoner plaintiff notified defendant twice that despite being provided pain medicine he was experiencing pain and he needed a soft diet).

Here, plaintiff alleges that Defendant Pecht commenced a course of treatment for muscular skeletal pain management and continued with that treatment even after it became clear that it was not working. (Doc. 1, Compl. at ¶¶ 29-33). As plaintiff's condition worsened under the treatment, Defendant Pecht did not immediately examine Kitchen and merely ordered an increase in the medication. (*Id.* at ¶ 34). Defendant Pecht finally physically examined Kitchen for the first time approximately a week after the treatment began. (*Id.* at ¶ 53). Defendant Pecht noticed that Kitchen "was extremely anxious, had pain everywhere, was perspiring profusely" and winced and complained of severe tenderness anytime and anywhere Pecht touched him. (*Id*. at ¶ 55). Pecht knew at that time that Kitchen was on pain medications and steroids, and that his symptoms were worsening, but nevertheless ordered that medications to continue. (*Id.* at ¶ 56). He provided no other medical care or

11

diagnosis. (*Id.* at ¶ 57). Pecht further denied Kitchen's request for immediate medical attention. (*Id.* at ¶ 58). Pecht persisted in refusing to change treatment and denying plaintiff's request to be taken to the hospital even after learning that Kitchen could not move, eat or drink and had become incontinent. (*Id.* at ¶¶ 60—94). Plaintiff has alleged more than medical malpractice. Defendant Pecht's refusal to alter Kitchen's treatment despite his worsening condition is sufficient to establish deliberate indifference to a serious medical need and the wanton infliction of pain. The motion to dismiss count II of the complaint will therefore be denied.

## B. Count IV-Failure to intervene

Defendant Pecht next moves to dismiss Count IV of the complaint which asserts a cause of action for failure to intervene pursuant to 42 U.S.C. § 1983. (Doc. 1 Compl. at ¶¶ 129—130). Plaintiff agrees to the dismissal of Count IV as to Defendant Pecht because the claim that he failed to intervene is subsumed into Count II – Denial and delay of access to adequate medical care. (Doc. 46, Pl.'s Oppo. Br. at 10 n.10)[6]. Accordingly, we will dismiss Count II as it pertains to Defendant Pecht.

## C. Punitive Damages

Counts V and VI of plaintiff's complaint assert causes of action for medical negligence against Defendants Pecht and Wellpath. (Doc. 1, Compl. at ¶¶131—144). Each

---

[6] For ease of reference, the court refers to the page number found in the CM/ECF header.

12

count alleges that these defendants' actions were wanton, willful and/or taken in reckless disregard Kitchen's rights so as to support the award of punitive damages. (*Id.* at ¶ 137, 144). Defendant Pecht moves to dismiss the allegations against him of recklessness as they are merely formulaic.

The law provides that to state a claim for punitive damages, the plaintiff must plead facts that the defendant either acted with an evil motive or with reckless indifference to the rights of others. "The state of mind of the actor is vital. The act, or the failure to act, must be intentional, reckless or malicious." *Feld v. Merriam*, 485 A.2d 742, 748 (Pa. 1984). In evaluating a request for punitive damages, "one must look to 'the act itself together with all the circumstances including the motive of the wrongdoers and the relations between the parties.'" *Id.* (quoting *Chambers v. Montgomery*, 192 A.2d 355, 358 (Pa. 1963)). The purpose of punitive damages is to punish wrongdoers for the outrageous conduct done in reckless disregard for another person's rights. *Shecter v. Watkins*, 577 A.2d 585 (Pa. Super. Ct. 1990).

In section A above, we found that plaintiff's allegations were sufficient to establish deliberate indifference to a serious medical need and could amount to the wanton infliction of pain. The same facts that support those findings also support the finding that Defendant acted with a reckless disregard to the rights of others. Plaintiff alleges that Dr. Pecht continued with a course of medical treatment that clearly was not effective, which caused great physical distress to Kitchen and he eventually died from the lack of appropriate care

13

after suffering and seeking assistance for two weeks. Moreover, dismissal of the punitive damages claims before discovery is premature. *See Tucker v.* Horn, 4:16-cv-0071; 2016 WL 4679018 (M.D. Pa. Sept. 7, 2016) ("This Court has consistently held that it is premature to dismiss demands punitive damages prior to discovery[.]"). Dismissal of the recklessness claims is therefore inappropriate at this juncture.

## V. CONCLUSION

For the reasons set forth above, we find no merit to the Defendant Pecht's motion to dismiss Counts II or the complaint's allegations of recklessness. Plaintiff, however, has conceded that Count IV should be dismissed. Accordingly, we will grant the motion to dismiss as it pertains to Count IV and deny it in all other respects. An appropriate order follows.

Robert D. Mariani
United States District Judge