UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEBORA KITCHEN, individually and as ADMINISTRATRIX OF THE ESTATE OF SHAWN KITCHEN,<br>      Plaintiff<br><br>  v.<br><br>CLINTON COUNTY, WELLPATH LLC f/k/a CORRECT CARE SOLUTIONS, LLC; KARL PECHT; HOLLY BARRETT; CHRISTAL MILLER; CYNTHIA MANN; ASHELY BECHDEL; CATHY PERRY; [FIRST NAME UNKNOWN] POWELL; [FIRST NAME UNKNOWN] MOORE; [FIRST NAME UNKNOWN] MUTHLER; and [FIRST NAME UNKNOWN] WATSON,<br>      Defendants. | NO. 3:19-CV-1936<br><br>(JUDGE MARIANI) |

## MEMORANDUM OPINION

### I. INTRODUCTION

Presently before the Court is the motion to dismiss filed by Defendants Clinton County, Powell, Moore, Muthler, and Watson (collectively "County Defendants"). (Doc. 22). The County Defendants seek dismissal of portions of the complaint filed by Plaintiff Debora Kitchen, individually and as administratrix of the Estate of Shawn Kitchen ("plaintiff"). For the reasons discussed below, the Court will deny the motion.

1

## II. FACTUAL ALLEGATIONS

On November 21, 2017, Shawn Kitchen became incarcerated at the Clinton County Correctional Facility pursuant to a detainer involving an alleged probation violation. (Doc. 1, Compl. at ¶ 26). He had "pre-trial detainee" status at the prison. (*Id.* at ¶ 27).

At intake and processing, Kitchen complained of severe back pain. The prison prescribed nerve and pain medication, such as Tylenol and ibuprofen, as well as a steroid taper to resolve what they diagnosed as muscular skeletal complaints. (*Id.* at 28).

The medicine did not resolve Kitchen's pain, and the pain in fact increased. (*Id.* at ¶ 30). The defendants immediately became aware that the medicine did not work. (*Id.* at ¶ 29). As early as November 24, 2017, Defendant Holly Barrett, LPN, reported that Kitchen had so much pain that he was crying in his cell and could not stand on his own. (*Id.* at ¶¶ 7, 31). Kitchen requested that he be taken to the emergency room, Barrett denied the request without any examination, care or treatment. (*Id.* at ¶ 32).

Over the next two weeks, Kitchen's condition continued to worsen. He screamed and cried from pain. (*Id.* at ¶ 42-94). He also continued to seek emergency care as the pain spread. (*Id.* at ¶ 45). He began to hit his head against the bars due to the pain. (*Id.* at ¶ 63). He shook and perspired profusely. (*Id.* at ¶ 72). The prison, however, did not change his medical regimen or provide him emergency medical care. (*Id.* at ¶ 56). Plaintiff alleges that a reasonable medical practitioner would have known that Kitchen did not suffer from

muscular skeletal pain, but actually showed signs and symptoms of an infection. (*Id.* at ¶ 59).

Medical staff repeatedly denied Kitchen's requests for emergency care. (*Id.* at ¶¶ 45, 73, 74, 90). He eventually could not move or eat. (*Id.* at ¶¶ 79, 93). He laid in his cell immobile and urinated on himself. (*Id.* at ¶ 91). Corrections staff ridiculed him and placed him in a restraint chair for hours as punishment for continuing to seek medical care. (*Id.* at ¶¶ 65 66). They told him that he complained too much. (*Id.* at ¶ 85).

On December 3, 2017, Defendants Bechdel and Barrett found Kitchen lying face down in his cell, soaked in urine. (*Id.* at ¶ 95). They reported that he appeared to be catatonic, but neither called for emergency medical assistance. (*Id.* at ¶ 96). Instead, Bechdel and Barrett along with corrections staff placed him in a wheelchair to take him to the shower where he lost consciousness and his pulse. (*Id.* at ¶ 97). Then for the first time, prison medical staff called for emergency medical assistance. (*Id.* at ¶ 99). Staff members reported to the emergency medical personnel that Kitchen had not had any recent injury or illness, and had no complaints prior to his collapse. (*Id.* at ¶ 102).

Shortly after the emergency medical personnel arrived, Kitchen was pronounced dead. (*Id.* at ¶ 103). He died from a kidney infection caused by an easily treatable urinary tract infection. (*Id.* at ¶ 104). He was forty (40) years old. (*Id.* at ¶ 105). By the time Kitchen died, the Medical and Correctional Defendants had denied over two dozen requests

3

for medical assistance. (*Id.* at ¶ 100). The prison doctor had physically examined him only once. No blood work or tests had been performed, and no antibiotics had been prescribed. (*Id.*)

Based upon these allegations, which are provided with much greater detail in the complaint, Kitchen's Estate filed the instant lawsuit. The eight (8) count complaint asserts the following causes of action: Count I, failure to adopt policy, or in the alternative, failure to train or supervise, pursuant to 42 U.S.C. § 1983 against the Municipal Defendants[1]; Count II, denial and delay of access to adequate medical care pursuant to 42 U.S.C. § 1983 against the Medical Defendants[2]; Count III, denial and delay of access to adequate medical care pursuant to 42 U.S.C. §1983 against the Correctional Defendants[3]; Count IV, failure to intervene pursuant to 42 U.S.C. § 1983 against the Medical and Correctional Defendants; Count V, medical negligence (wrongful death) against Defendants Pecht and Wellpath; Count VI, medical negligence (survival) against Defendants Pecht and Wellpath; Count VII, medical negligence (wrongful death) as to the LPN Defendants[4]; and Count VIII, medical negligence (survival) as to the LPN Defendants and Wellpath.

---

[1] Plaintiff lists the Municipal Defendants as Clinton County and Wellpath, LLC. (Doc. 1, Compl. at ¶ 5).
[2] The Medical Defendants are Karl Pecht, M.D.; Holly Barrett, LPN; Christal Miller, LPN; Cynthia Mann, LPN; Ashely Bechdel, LPN; and Cathy Perry, LPN. (Doc. 1, Compl. at ¶ 12).
[3] The Correctional Defendants are Powell, Moore, Muthler, and Watson. (Doc. 1, Compl. at ¶ 19).
[4] The LPN Defendants are Holly Barrett, LPN; Christal Miller, LPN; Cynthia Mann, LPN; Ashely Bechdel, LPN; and Cathy Perry, LPN.

Defendants Clinton County, Powell, Moore, Muthler and Watson (collectively "the County Defendants") have filed a motion to dismiss the counts asserted against them, specifically Count I, Count III and Count IV. The parties have briefed their respective positions, bringing the case to its present posture.

### III. STANDARD OF REVIEW[5]

The court must dismiss a complaint under Federal Rule Civil Procedure 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations,

---

[5] Defendants do not label their motion as a motion to dismiss under Rule 12(b)(6) but we shall treat it as such. Apparently, defendants seek dismissal pursuant to the provisions of 28 U.S.C. § 1915A, which provides for screening of civil complaints which are filed by prisoners. This complaint, however, is not filed by a prisoner or while the plaintiff's decedent was imprisoned and the initial screening provisions of section 1915A are inapplicable. *See, e.g., Olivas v. Nev. Ex rel. Dept. of Corr.*, 856 F.3d 128 (9th Cir. 2017) (Former prisoner who filed suit, after he was released from custody, for his treatment while a prisoner was not a suit filed by a "prisoner" and subject to 1915A initial screening).

alterations, and quotations marks omitted). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Labs.*, 707 F.3d 223, 231 n.14 (3d Cir. 2013) (internal citation, alteration, and quotation marks omitted). Thus, "the presumption of truth attaches only to those allegations for which there is sufficient 'factual matter' to render them 'plausible on [their] face.'" *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (alteration in original) (quoting *Iqbal*, 556 U.S. at 679). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.*

"Although the plausibility standard 'does not impose a probability requirement,' it does require a pleading to show 'more than a sheer possibility that a defendant has acted unlawfully.'" *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal citation omitted) (first quoting *Twombly*, 550 U.S. at 556; then quoting *Iqbal,* 556 U.S. at 678). "The plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* at 786-787 (quoting *Iqbal,* 556 U.S. 679).

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

## IV. ANALYSIS

The issues raised in the County Defendants' motion can be broken down into the following four general areas: whether plaintiff has plausibly pleaded municipal liability against the county; whether plaintiff properly alleges a denial and delay of access to adequate medical care against the Correctional Defendants; whether plaintiff states a plausible claim for failure to intervene against the Correctional Defendants and whether the individual Correctional Defendants are shielded by qualified immunity. We will discuss each issue in turn.

### 1. Municipal Liability

Count I of the plaintiff's complaint asserts a cause of action for failure to adopt policy or, in the alternative, failure to train or supervise pursuant to 42 U.S.C. § 1983 brought against the Municipal Defendants, that is Defendant Clinton County and Defendant Wellpath LLC, f/k/a Correct Care Solutions, LLC. Plaintiff alleges that these defendants failed to

7

adopt a policy or procedure to address the immediate and/or emergency medical concerns of inmates under their care and custody. (Doc. 1, Compl. at ¶ 115). The failure to adopt such a policy caused Kitchen to "suffer from actual physical torture that culminated in his slow, painful, and lingering death." (*Id.* at ¶ 116). In the alternative, plaintiff claims that the Municipal Defendants failed to train and/or supervise the Medical and Correctional Defendants in emergency medical concerns. (*Id.* at ¶¶ 121-122). Clinton County moves to dismiss this count as to itself.

Plaintiff brings Count I pursuant to 42 U.S.C. § 1983 ("section 1983"). In pertinent part, section 1983 provides as follows:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws, shall be liable
> to the party injured in an action at law, suit in equity or other
> proper proceeding for redress . . . .

42 U.S.C. § 1983.

Section 1983 does not, by its own terms, create substantive rights. Rather, it provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws. United States v. Kneipp, 95 F.3d 1199, 1204 (3d Cir. 1996). To establish a claim under section 1983, two criteria must be met. First, the conduct complained of must have been committed by a person acting under of color of state law. Second, the conduct

8

must deprive the complainant of rights secured under the Constitution or federal law. Sameric Corp. of Delaware, Inc. v. City of Philadelphia, 142 F.3d 582, 590 (3d Cir. 1998).

Here, plaintiff seeks redress for the violation of Kitchen's right to adequate medical care as a pretrial detainee, which is a right protected by the due process clause of the Fourteenth Amendment to the United States Constitution. *See Natale v. Camden Cnty. Corr. Facility,* 318 F.3d 575, 581 (3d Cir. 2003).

The Municipal Defendants, including Defendant Clinton County, however, cannot be held liable for the constitutional violations of their employees based upon vicarious liability. *Monnell v. New York City Dept. of Soc. Svcs.*, 436 U.S. 658, 691 (1978). Rather, for liability to attach to the Municipal Defendants, plaintiff must allege that the violation of Kitchen's constitutional rights was caused by a policy or custom used by the Municipal Defendants. *Id.*

The Third Circuit Court of Appeals has explained that "policy or custom" can be found in one of the following three situations: 1) where the appropriate officer has promulgated a generally applicable statement of policy for the municipality; 2) where no general rule has been announced, but the policymaker itself performs the act which violated federal law; and 3) where no policy exists and the policymaker has refused to act, even though the "need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional

rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need." *Natale*, 518 F.3d at 584 (internal quotation marks and citations omitted).

Here, plaintiff alleges the third type of municipal liability, the failure of the Municipal Defendants to impose a policy. Specifically, plaintiff argues that the Municipal Defendants violated Kitchen's rights by failing to implement a policy with regard to emergency care at the prison, a policy which was obviously needed. The County Defendants move to dismiss this claim for several reasons. Generally, they argue that plaintiff cannot identify a Clinton County policy or custom that violates federal law. Defendant is accurate in a sense, because plaintiff has not alleged a policy or custom. Plaintiff does, however, allege that the *failure* of the defendants to impose a policy regarding emergency care is sufficient to state a cause of action pursuant to *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575 (3d Cir. 2003). After a careful review, we agree.

*Natale* dealt with a plaintiff who was a pre-trial detainee in a New Jersey prison. *Id.* at 578. He was insulin dependent. *Id.* The prison did not timely provide him with insulin, which he alleged caused him to suffer a stroke. *Id.* He sought to impose municipal liability against the prison health services on the basis that they had failed to establish a policy which addressed the immediate medication needs of inmates with serious medical conditions. The Third Circuit, in ruling at the summary judgment stage, ruled in favor of the plaintiff. The court explained: "A reasonable jury could conclude that the failure to establish a policy to address the immediate medication needs of inmates with serious medical

conditions creates a risk that is sufficiently obvious as to constitute deliberate indifference to those inmates' medical needs." *Id.* at 585.

Plaintiff argues that likewise having a policy responsive to inmates' emergent medical needs is an obvious need in any corrections medical program. The Municipal Defendants here did not have such a policy; therefore, they have sufficiently alleged a "policy or practice" to impose municipal liability.

The County Defendants attempt to distinguish *Natale*. They point out, for example, that the Third Circuit holding applied to the health services provider, not to the county. In *Natale,* the district court had granted summary judgment for the county and the jail itself. The plaintiff did not appeal the grant of summary judgment as to those entities. Thus, liability with regard to the county and jail was not before the Third Circuit. No explanation was provided as to why summary judgment was granted in their favor by the district court. *Id.* at 578 n.2. There is no reason, therefore, to conclude that because the county was not before the court in *Natale* that Clinton County should be dismissed from this case. The analysis in *Natale* appears applicable to any municipal defendant and the court did not limit its holding to prison health service providers. The Supreme Court has indicated that the fact that a local government may contract with a private provider to provide medical care at a prison does not "relieve [the local governmental entity] of its constitutional duty to provide adequate medical treatment to those in its custody." *West v. Atkins*, 487 U.S. 42, 56 (1988).

Next, defendants attempt to distinguish *Natale* on the facts.

The policy in *Natale* dealt with a failure to address immediate medication needs of inmates who were brought to the prison. Here, according to the County Defendants, plaintiff does not raise issues about immediate medication needs, and therefore, *Natale* does not apply. While defendants are correct that the policy at issue here is not exactly the same as the policy at issue in *Natale*, they are not correct in arguing that dismissal of Count I is as a result needed.

Where a municipal body fails to establish a policy which creates a risk that is sufficiently obvious as to constitute deliberate indifference to an inmate's medical needs, a prisoner may have a civil rights action. *Natale*, 318 F.3d at 584. Here, it is obvious that prisoners may have emergency medical needs – just as in *Natale* it was obvious that prisoners may have immediate medical needs. A failure to have a policy related to such emergent needs might be deemed deliberate indifference. Accordingly, Clinton County's motion to dismiss Count I will be denied.[6]

---

[6] Defendant Clinton County points out that it contracted with Defendant Wellpath to provide medical care and treatment to inmates at the county correctional facility. (*See* Doc. 1, Comp. at ¶ 5). Clinton County argues that plaintiff cannot utilize this contract to establish liability against the County based on the alleged actions or inactions of Wellpath, for example, medical malpractice. It does not appear that the complaint seeks to hold Clinton County liable on the basis of the contract with Wellpath. Rather, the complaint asserts an independent constitutional violation against the county. Even if the plaintiff can be construed to be relying on the contract, it would be inappropriate to dismiss as this point because the contract is not before the court and discovery has not yet been completed. Without the contract it is not possible to fully analyze the relationship between Clinton County and Wellpath. It may be more appropriate to address these issues at the summary judgment stage if necessary. Likewise, the County Defendants challenge plaintiff's alternative theories of liability, failure to train and supervise. For purposes of the procedural

## 2. Denial or Delay of Access to Adequate Medical Care

Count III of plaintiff's complaint asserts a cause of action against the individual Correctional Officers for denial and delay of access to adequate medical care pursuant to 42 U.S.C. § 1983. (Doc. 1, Compl. ¶¶ at 127-28). Plaintiff alleges that the Correctional Defendants had reason to believe, or actually knew, that the Medical Defendants were mistreating or not treating Kitchen's serious medical needs and exhibited deliberate indifference to that mistreatment/nontreatment. (*Id.* at ¶ 128).

The law provides that absent a reason to believe a prison's medical staff are mistreating, or not treating, a prisoner, a non-medical prison official is not exhibiting deliberate indifference by failing to respond to a prisoner's medical complaints. *Farmer v. Brennan*, 11 U.S. 825, 837 (1994). Thus, non-medical prison officials may be held liable for denial of adequate medical treatment of an inmate only where they have reason to believe, or actual knowledge, that prison medical staff are mistreating, or not treating a prisoner. *Spurill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004).

The parties agree on the law. They disagree, however, as to whether plaintiff has sufficiently pleaded deliberate indifference on the part of the Correctional Defendants. We find that the plaintiff has.

---

posture of this case, these claims have been sufficiently pleaded. These issues may be revisited, however, after the facts regarding the training and supervision are revealed through discovery.

According to the plaintiff's complaint, the Correctional Defendants for two weeks witnessed Kitchen crying and screaming in pain, being unable to move, eat or drink, curling up on his cell floor writhing in pain, urinating on himself, and engaging in self-harm in an attempt to procure medical care. They ridiculed him during this time period. The Correctional Defendants argue that during Kitchen's incarceration, the Medical Defendants were examining Kitchen, and therefore, they had no duty to see that Kitchen obtained medical treatment. At this early stage of the case, before discovery has even taken place, and when we must accept the complaint's allegations as true, it is inappropriate to decide what the facts actually were. Plaintiffs have sufficiently plead that the Correctional Defendants were deliberately indifferent to Kitchen's serious medical needs. The motion to dismiss Count III will be denied.

### 3. Failure to Intervene

Count III of plaintiffs' complaint asserts a cause against the Correctional Defendants for denial and delay of access to adequate medical care pursuant to 42 U.S.C. § 1983. (Doc. 1, Compl. ¶¶ at 127-28). The complaint alleges that the Correctional Defendants had reason to believe or actually knew that the Medical Defendants were mistreating or not treating Kitchen's serious medical needs and inflicted "unnecessary and wanton pain upon him by denying and/or delaying access to medical care in a way that patently offends the evolving standards of decency for which he was constitutionally protected to enjoy . . . ." (*Id.* at ¶ 128).

The law provides that to establish a constitutional claim for failure to intervene, a plaintiff must demonstrate the following three elements: 1) an underlying constitutional violation; 2) a duty to intervene and 3) a realistic and reasonable opportunity to intervene. *Smith v. Mensinger*, 293 F.3d 641, 650-51 (3d Cir. 2002).

As explained in the previous section, plaintiff has sufficiently alleged that the Correctional Defendants were reasonably aware the prison's medical staff were denying medical care to Kitchen, which is a constitutional violation. They failed to intervene where they had a realistic and reasonable opportunity, over the course of two weeks, to do so. Accordingly, the motion to dismiss Count IV will be denied.[7]

### 4. Qualified Immunity

The final issue raised by the Correctional Defendants involves the doctrine of qualified immunity. They argue that qualified immunity shields them from liability in the instant case. We disagree.

Qualified immunity can serve as a defense to an individual defendant accused of a civil rights violation. *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991). "A government official sued under § 1983 is entitled to qualified immunity unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged

---

[7] With regard to Counts III and IV, the parties' briefs go into great detail regarding the factual allegations of the complaint. The resolution of these factual matters is best left to a latter stage of the case, not the motion to dismiss stage.

conduct." *Carroll v. Carman*, 574 U.S. 13, 16 (2014). For a qualified immunity analysis, therefore, the court must examine: 1) whether the officials violated a constitutional right and 2) whether that right was clearly established at the time. *Wright v. City of Phila.*, 409 F.3d 595, 699–700 (3d Cir. 2005) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

A legal right is "clearly established" where "its contours [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "In other words, existing precedent must have placed the statutory or constitutional question beyond debate. This doctrine gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." *Carroll*, 574 U.S. at 17.

Qualified immunity is inapplicable in the present case. The constitutional rights at issue, which the Correctional Defendants are accused of violating, are denial/delay of access to adequate medical care and failure to intervene. Existing precedent has placed the existence of these constitutional rights beyond debate. *See Spurill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004) (explaining when a non-medical prison official can be held liable for deliberate indifference to a serious medical need); *Smith v. Mensinger*, 293 F.3d 641, 650-51 (3d Cir. 2002) (applying failure to intervene analysis to prison officials who failed to stop an Eighth Amendment violation in prison). Accordingly, qualified immunity does not apply to the individual Correctional Defendants.

## V. CONCLUSION

For the reasons set forth above, we find no merit to the County Defendants' motion to dismiss Counts I, III or IV of plaintiff's complaint. Additionally, we find that it is inappropriate at this time to conclude that qualified immunity shields the individual Correctional Defendants from liability. The County Defendants' motion to dismiss will thus be denied. An appropriate order follows.

*[signature]*

Robert D. Mariani
United States District Judge